IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JAMES S.,[1]  )<br>  )<br>**Plaintiff,**  )<br>  )<br>v.  )<br>  )<br>ANDREW M. SAUL,  )<br>**Commissioner of Social Security,**  )<br>  )<br>**Defendant.**  )<br>_____) | CIVIL ACTION<br><br>No. 19-1203-JWL |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) pursuant to sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.   Background**

Plaintiff filed an application for DIB on June 30, 2016. (R. 12, 179-80). After exhausting administrative remedies before the Social Security Administration (SSA),

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff claims the ALJ erred because she failed to apply the next higher age category in this borderline age situation and failed to provide valid reasons to discount Plaintiff's allegations of disabling symptoms.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala,

36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform his past

relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, he is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

## II.     Borderline Age

Plaintiff argues that he "was less than three months from his fifty-fifth birthday and changing age categories to 'advanced age.'" (Pl. Br. 6) (citing 20 C.F.R. § 404.1563(e). He argues that remand is necessary here because "the ALJ's decision does not include a factual finding addressing the borderline situation." Id. at 7. The Commissioner argues that the ALJ explicitly considered the borderline age situation but declined to apply the higher age category. (Comm'r Br. 3). He argues the SSA does not apply the Medical-Vocational Guidelines (the grids) mechanically and that the ALJ in this case considered the borderline age situation in accordance with 20 C.F.R. § 404.1563, POMS DI 25015.006, and HALLEX I-2-2-42.B.1. Id. at 4. He points out a higher age category is not to be applied automatically. Id. at 6 (citing POMS DI 25015.006E). In his Reply Brief, Plaintiff argues "the ALJ's analysis was a conclusion in the guise of analysis" (Reply 1) because "the ALJ failed to show her work." Id. at 2.

4

**A.     Standard Applicable when Considering a Borderline Age Situation**

As the parties agree, an ALJ should not apply an age category in the grids mechanically. (Pl. Br. 5); (Comm'r Br. 4) see also 20 C.F.R. § 404.1563(b); POMS DI 25015.006; HALLEX I-2-2-42C ("ALJs will not use the higher age category automatically in a borderline age situation."). The regulation requires that if a claimant is "within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that [the claimant is] disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case." 20 C.F.R. § 404.1563(b).

The Commissioner acknowledges that a "borderline age situation" exists where application of a claimant's chronological age would result in finding no disability, the claimant's age is "within a few days to a few months" of the next higher age category and application of the higher age category would result in finding disability. HALLEX I-2-2-42B; POMS DI 25015.006C. "Generally, SSA considers a few days to a few months to mean a period not to exceed six months." Id. I-2-2-42B(1); see also POMS DI 25015.006B. In considering whether to use the next higher age category, a sliding scale is used, "The closer in time the claimant is to the next higher age category, the more disadvantageous the claimant's age." Id. I-2-2-42C(1); see also POMS DI 25015.006E. In applying the sliding scale, the SSA will consider the impact of each of the grid factors (RFC, age, education, and work experience) for both the chronological age category and the next higher age category and determine whether the overall impact justifies use of the higher age category. Id. I-2-2-42C; see also POMS DI 25015.006E.

### B.   The ALJ's Findings

The ALJ explained her consideration of the age category to be used here:

> 7. **The claimant was born on December 8, 1963 and was 52 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date. (20 CFR 404.1563).**
>
> Although a borderline age situation exists because the claimant is within a few days to a few months of attaining the next higher age category and use of the higher age category would result in a finding of "disabled" instead of "not disabled", use of this age category is not supported by the limited adverse impact of all factors on the claimant's ability to adjust to other work.

(R. 25) (bold in original).

### C.   Analysis

The ALJ did precisely as the Commissioner's regulations and policies require. Clearly, as quoted above, the decision includes a factual finding addressing the borderline situation despite Plaintiff's contrary argument. As Plaintiff argues, he was born December 8, 1963 and the decision issued September 5, 2018. (R. 25, 27); see also (Pl. Br. 6). Using these dates however, reveals that Plaintiff was not "less than three months from his fifty-fifth birthday and [from] changing age categories to 'advanced age'" (Pl. Br. 6), but was three months plus three days from his fifty-fifth birthday. While this is grammatically only a three-day error, because a borderline age situation uses a sliding scale over a period of only six months, Plaintiff's choice of wording implies a much greater weight toward one end of the scale—from only three days, to a maximum length of one day less than three months, neither of which is an accurate representation. Plaintiff's misrepresentation does not demonstrate error in the ALJ's analysis.

Plaintiff's argument in his Reply Brief, that "the ALJ failed to show her work" (Reply 2) fares no better because it ignores the decision at issue and apparently misunderstands what is required.  As quoted above, the ALJ recognized this is a borderline age situation.  She also stated she considered the adverse impact of all factors, and determined they had a <u>limited</u> adverse impact on Plaintiff's ability to adjust to other work.  Apparently, Plaintiff is unaware of the vocational factors applicable to a determination based on the grids—RFC, age, education, and work experience—because he does not recognize that each of these factors was addressed in the decision at issue.  RFC was addressed extensively (R. 18-25), age was addressed as quoted above, the ALJ found that Plaintiff "has at least a high school education and is able to communicate in English," and she specifically listed each of Plaintiff's jobs which she found to be past work experience.  (R. 25).  Moreover, the vocational expert (VE) explained that all these jobs were either semiskilled or skilled.  (R. 68-69).  The ALJ stated she had considered the vocational factors and found they had a "limited adverse impact" on Plaintiff's ability to adapt to other work.  Plaintiff has not demonstrated error in this finding.

Plaintiff argues that he "only had to establish one additional vocational adversity to trigger the ALJ's duty to consider applying the next age category," and argues that the RFC assessed by the ALJ included manipulative and nonexertional limitations which "reduce the light job base significantly and support a finding of applying the higher age category." (Pl. Br. 8).  However, Plaintiff's argument regarding significant erosion of the light job base ignores the POMS warning not to double weigh RFC limitations.  POMS DI 25015.006E(1)(d) ("If the occupational base erosion is substantial, be careful to select

7

the correct medical-vocational rule. Do not use RFC to support the borderline age analysis when the occupational base erosion is substantial because that is double weighing."). The ALJ applied the correct legal standard and the evidence supports her findings. The court may not reweigh the evidence and substitute its judgment for that of the Commissioner.

### III.    Evaluation of Plaintiff's Allegations of Disabling Symptoms

Plaintiff claims the ALJ failed to give valid reasons to discount his allegations of symptoms. He argues, "A preponderance of evidence supports [Plaintiff's] allegations." (Pl. Brief 10). He then points to record evidence supporting his allegations of disabling symptoms. Id. at 11-12. The Commissioner argues that the ALJ properly discounted Plaintiff's allegations and cites to record evidence supporting the inconsistencies relied upon by the ALJ in discounting Plaintiff's allegations. (Comm'r Br. 7-9). He argues that Plaintiff merely asks the court to reweigh the evidence and substitute its judgment for that of the Commissioner. Id. at 20.

#### A.    Standard for Evaluating a Claimant's Allegations of Symptoms

The court's review of an ALJ's evaluation of a claimant's allegation of symptoms[2] is deferential. An ALJ's evaluation of a claimant's allegations of symptoms is generally

---

[2] The cases cited here were decided when the term used to describe the evaluation of a claimant's allegations of symptoms resulting from his impairments was "credibility determination." Although that term is no longer used, the applicable regulation never used that term and the procedure for evaluating a claimant's allegations of symptoms has not significantly changed. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5871 (Jan. 18, 2017) (codified at 20 C.F.R. § 404.1529). The evaluation based on 20 C.F.R. § 404.1529 (2018) is still the standard to be used as explained in the regulations in effect on September 5, 2018, when this case was decided.

treated as binding on review.  Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983).  "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence.  Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173.  Moreover,

> [b]ecause [such an] assessment requires consideration of all the factors "in combination," [] when several of the factors relied upon by the ALJ are found to be unsupported or contradicted by the record, [a court is] precluded from weighing the remaining factors to determine whether they, in themselves, are sufficient to support the [evaluation of symptom allegations].

Bakalarski v. Apfel, No. 97-1107, 1997 WL 748653, *3 (10th Cir. Dec. 3, 1997) (emphasis in original) (quoting Huston v. Bowen, 838 F.2d 1125, 1132 n.7 (10th Cir. 1988) (citation omitted)).

Therefore, in reviewing the ALJ's credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility.  Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994).  "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'"  Wilson, 602 F.3d at 1144 (quoting Huston, 838 F.2d at 1133); Hackett, 395 F.3d at 1173.

### B.    The ALJ's Evaluation

The ALJ summarized Plaintiff's allegations of disabling symptoms (R. 19) and stated her finding that his "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other

9

evidence in the record for the reasons explained in this decision." (R. 20). She related at least eight inconsistencies she relied upon to discount Plaintiff's allegations: She noted that psychiatric testing by Plaintiff's primary care physician during routine care in 2017 yielded normal findings but testing during therapy in 2017 "demonstrated a recurrently depressed and anxious mood with a blunted affect." Id. at 21. Plaintiff's asthma "has manifested as some intermittent decreased breath sounds, but not greater abnormalities consistent with his allegations." Id. Plaintiff's migraines "are not documented to have resulted in any chronic pain behavior, environmental sensitivities, or neurological deficits." Id. Plaintiff has been treated for epilepsy but "the record does not document any acute seizure activity, a postictal state, or neurological residuals." Id. Plaintiff's carpal tunnel syndrome "is not documented to have manifested as any persistent abnormalities since the alleged onset date of disability." Id. Plaintiff has had intermittent abnormalities due to his mental impairments, but he has not "demonstrated persistent psychiatric abnormalities that are refractory to treatment, such as profound depression or anxiety, anhedonia, or deficits with attention, concentration, or memory." Id. The ALJ noted "the record does not objectively corroborate the claimant's alleged panic attacks." Id. Finally, she noted Plaintiff's mental impairments have been treated relatively conservatively and "[h]e has not been recommended for greater treatment more consistent with his extreme allegations, such as inpatient or emergent psychiatric care. Additionally, the record does not document the claimant experiencing limiting medication side effects, such as objectively appreciable fatigue." Id. at 21-22.

### C. Analysis

Plaintiff does not even attempt to refute any of the inconsistencies cited by the ALJ in discounting his allegations.  Rather, he points to other evidence (generally his own reports) tending to support his allegations, implies that the ALJ cherrypicked the record, and argues that the "preponderance of evidence supports [his] allegations."  (Pl. Br. 10).  Even were the court to assume Plaintiff is correct that a preponderance of evidence supports his allegations, the record supports the ALJ's eight reasons to discount Plaintiff's allegations, and the court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision."  Bowling, 36 F.3d at 434 (quoting Harrell, 862 F.2d at 475).  The court finds no error in the ALJ's decision.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated May 7, 2020, at Kansas City, Kansas.

s:/ *John W. Lungstrum*
**John W. Lungstrum**
**United States District Judge**